UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS HARRIS,

    Plaintiff,

v.

    Case No. 1:25-cv-227

    Hon. Hala Y. Jarbou

CODY BORTA,

    Defendant.
_____/

## OPINION

This lawsuit challenges the constitutionality of a traffic stop conducted by the Grand Rapids Police Department (the "GRPD"). Plaintiff Marcus Harris initially filed suit only against Defendant Cody Borta, an officer present at the scene. Harris now seeks to amend the complaint to add ten additional defendants—all officers who allegedly participated in the stop—and the City of Grand Rapids. (*See* 2d Mot. to Amend, ECF No. 36; Proposed Am. Compl., ECF No. 39.) Also before the Court is Harris's motion to strike Borta's response to the motion for leave to amend (ECF No. 45). For the reasons explained below, the Court will grant Harris leave to amend his complaint but deny his motion to strike Borta's response.

### I. BACKGROUND

**A. Allegations in the Proposed Amended Complaint**

This lawsuit stems from a traffic stop conducted by the GRPD on the evening of July 6, 2024. (Proposed Am. Compl. ¶ 8.) Harris was in Grand Rapids that night, driving to dinner with his brother Martez and another unnamed passenger.[1] (*Id.* ¶¶ 8–9.) Two GRPD officers, Borta and

---

[1] For clarity, the Court refers to Plaintiff as "Harris" and his brother as "Martez."

Damian Dominguez, stopped Harris's car on Fuller Avenue. (*See id.* ¶ 11.) The officers informed Harris that they had a warrant for Martez's arrest based on a parole violation. (*Id.*) Harris found out later that no parole violation had occurred—the police mistakenly thought that Martez had violated his curfew, but it did not come into effect until several hours later. (*Id.* ¶ 42.)

Harris and Martez exited their car, and Borta and Dominguez pointed their revolvers at the brothers. (*Id.* ¶ 12.) Around this time, several other officers arrived at or near the scene: Amanda Stewart, Quaye Cobbs, Troy Augustat, Todd Barnett, Calvin Crandall, Sergeant Ben Johnson, M. Siemersma, Shawn DeWent, and Caleb Eastman. (*See id.* ¶¶ 13–14, 16, 18, 20, 29, 32.) One officer stepped out of Johnson's patrol car and momentarily pointed a rifle at Harris. (*Id.* ¶ 15.) Cobbs also pointed a gun at Harris and Martez, and Eastman pointed a taser at them. (*Id.* ¶¶ 18–19.) The officers ordered Martez to approach them while facing backwards, handcuffed him and patted him down, and placed him in the back of a police car. (*Id.* ¶¶ 21–22.) They continued to point weapons at Harris, who was standing with his hands in the air. (*Id.* ¶ 23.)

Harris told the police that "he was a law-abiding citizen and that he was just going out to dinner." (*Id.* ¶ 25.) The officers ordered Harris to walk backwards towards them with his hands raised. (*Id.* ¶ 26.) Harris complied. (*Id.* ¶ 27.) The officers handcuffed Harris, patted him down, and placed him into a police car. (*Id.* ¶ 29.) They also searched Harris's pants pockets without permission and removed his wallet, phone, and other items. (*Id.* ¶ 30.) The police also directed the unnamed passenger to exit the car. (*Id.* ¶ 31.)

At Johnson's direction, officers Stewart, DeWent, and Dominguez then searched the interior and trunk of Harris's car. (*Id.* ¶¶ 32–33.) They found two empty Crown Royal bottles and removed them. (*Id.* ¶ 34.) Harris protested the search, and Johnson told him that the officers' conduct "was the policy of the Grand Rapids Police Department . . . with respect to all parole

violation warrant arrests." (*Id.* ¶¶ 35–36.) About 20 minutes after the traffic stop had begun, the police released Harris and returned his personal items. (*Id.* ¶ 37.) Martez was taken to jail. (*Id.* ¶ 40.)

Soon after, the police called Harris to tell him that the arrest of Martez had been in error, and asked Harris to pick up his brother. (*Id.* ¶ 41.) The police arranged a meeting with Harris at a gas station about 30 minutes after they had left the scene of the traffic stop. (*Id.* ¶ 43.) When Harris came to pick up his brother, Stewart told him "that the warrant for Martez Harris was not valid and it was all a big mistake." (*Id.*)

**B. Timing of the Motion for Leave to Amend**

In order to address the propriety of Harris's motion for leave to amend, it is necessary to recount the circumstances surrounding it. The allegations in the proposed amended complaint are largely based on the officers' body camera footage. Harris's attorney, William Piper, initially sought the footage from the City of Grand Rapids via a Freedom of Information Act (FOIA) request on August 12, 2024, before this lawsuit was filed. (2d Mot. to Amend ¶ 2.) He received no response, and sent a follow-up on January 7, 2025. (*Id.* ¶¶ 3–4.) The following day, the GRPD requested a deposit for the FOIA request and indicated that it would take six to eight months to fulfill the request. (*Id.* ¶ 5.) On January 9, Piper mailed the deposit to the City. (*Id.* ¶ 6.)

On February 4, 2025, Piper's secretary called the GRPD to check on the status of the FOIA request; she was told it would be fulfilled in six to eight months. (*Id.* ¶ 7.) Piper did have access to a redacted police report that indicated Borta was one of the officers at the scene (*id.* ¶ 8), so he filed this lawsuit naming just Borta as a defendant on February 26. On April 3, 2025, the GRPD emailed Piper to confirm that he still wanted to pursue his FOIA request; Piper responded that he did. (*Id.* ¶¶ 10–11.) On July 14, the GRPD sent Piper an invoice for the remaining balance regarding the request. (*Id.* ¶ 14.)

At this point, Piper concluded that the FOIA process was not proceeding quickly enough and that he could instead obtain the body camera footage through discovery. (*Id.* ¶ 15.) Thus, on July 25, 2025, his assistant emailed the GRPD to cancel the FOIA request and ask for a refund. (7/25/2025 Email, ECF No. 36-12.) Earlier that month, on July 9, Harris had sent a request for production of the body camera footage to Borta. (2d Mot. to Am. ¶ 13.) Borta responded on September 2, 2025; he did not produce the footage, but instead said that Harris would get them through the FOIA process. (*Id.* ¶ 16.) According to Borta, he informed Harris in his discovery response that he had no ability to provide the footage. (Def.'s Br. in Opp'n to 2d Mot. to Amend 5, ECF No. 43.)

Under the Court's case management order (ECF No. 18), the parties were required to submit all requests for leave to amend the pleadings by September 15, 2025. Harris apparently intended to submit an amended pleading to include the other officers at the scene as defendants, but without access to the body camera footage he could not determine which acts had been committed by which officers. Thus, in order to ensure he met the September 15 deadline, he submitted a proposed amended complaint on September 9 that named additional officers as defendants but did not clarify which conduct each one had engaged in. (2d Mot. to Amend ¶ 17; *see* 1st Mot. to Amend, ECF No. 24.)

Having not received the footage from Borta, on September 26 Piper contacted the GRPD to re-open his FOIA request and pay the required deposit. (2d Mot. to Amend ¶ 26.) The following day, he attempted to contact Borta's counsel about the issue, but did not receive a response. (*Id.* ¶ 22.) On October 2, Piper received the body camera footage from Borta's counsel. (*Id.* ¶ 25.) On October 30, before the Court had ruled on Harris's first motion for leave to amend his

4

complaint, he withdrew that motion and submitted a new motion with a proposed amended complaint that specifies the conduct of each officer. That motion is now before the Court.

## II. LEGAL STANDARD

When more than 21 days have passed since a defendant responded to a complaint, the plaintiff can only amend the complaint with consent of the defendant or leave of the Court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.* 15(a)(2). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

When a plaintiff seeks to amend their complaint after the deadline set for such amendments in the Court's scheduling order, the plaintiff must meet the requirements of Rule 16, which allows amendment of the scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(4); *see Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). Demonstrating good cause requires a plaintiff to "show[] that despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 907. The court must also consider the potential prejudice to the defendant of allowing the plaintiff to belatedly amend. *See id.* at 909. However, "courts consider the extent of prejudice to the nonmoving party only if the movant proceeded diligently, and then only to ascertain whether there exist additional reasons to deny a motion." *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014) (quotation marks omitted). In other words, "[a] movant who fails to show he acted diligently will not be accorded relief . . . merely because the opposing party will not suffer substantial prejudice." *Carroll v. Young*, No. 1:19-CV-00153-GNS-HBB, 2022 WL 14151977, at *4 (W.D. Ky. Oct. 24, 2022).

### III. ANALYSIS

**A. Motion to Strike**

Before ruling on Harris's motion for leave to amend, the Court must address Harris's motion to strike Borta's response to the motion for leave.  The Federal Rules allow the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  But a response brief is not a "pleading," so Harris's motion to strike is improper.  *See, e.g.*, *Dawson v. City of Kent*, 682 F. Supp. 920, 922 (N.D. Ohio 1988) (Rule 12(f) "relates only to pleadings and is inapplicable to other filings"); *Reeves v. Case W. Rsrv. Univ.*, No. 1:07-CV-1860, 2009 WL 3242049, at *13 (N.D. Ohio Sept. 30, 2009) ("While some courts have employed [Rule 12(f)] to strike an affidavit or a brief, or portions thereof, there is no basis in the Federal Rules for doing so.").

Moreover, the Court is not persuaded by Harris's arguments for striking Borta's response. First, Harris argues that Borta's response is "fundamentally unfair" because it "reads like a motion to dismiss," and "filing it in this fashion, as a response to a motion for leave to amend . . . deprives the plaintiff of an opportunity to respond."  (Pl.'s Mot. to Strike ¶ 5, ECF No. 45.)  But Harris points to no authority supporting the view that Borta's response is improper.  Furthermore, while it is somewhat unclear whether a motion for leave to amend qualifies as a dispositive motion and thus entitles Harris to file a reply, he could certainly have sought leave to file a reply brief if he thought Borta's response warranted additional argument.  *See* W.D. Mich. LCivR 7.3(c).

Second, Harris contends that Borta cannot argue that Harris's claims against the additional proposed defendants would be futile, because Borta lacks standing to raise arguments on behalf of other defendants.  But the cases Harris cites for this proposition do not support it: they discuss when a plaintiff has Article III standing to bring a lawsuit, *see Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976); *Wittman v. Personhuballah*, 578 U.S. 539, 549 (2016), which is an entirely

6

different question from when a defendant is entitled to make a particular argument. Contrary to Harris's contention, Borta does not need "standing to invoke the jurisdiction of [this] court" because arguing against a motion to amend is not a request for the Court to "exercise remedial powers on [Borta's] behalf." (Pl.'s Br. in Supp. of Mot. to Strike 2, ECF No. 46.)

Although Harris does not cite them, there *are* some cases holding that a defendant cannot oppose a plaintiff's proposed amendment to the extent that the amendment adds other parties as defendants. *See, e.g.*, *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371, 379 (D.N.J. 2023) ("[A] current party unaffected by a proposed amendment lacks standing to raise a futility argument on behalf of proposed parties in opposition to a motion for leave to amend or supplement a complaint."); *Coleman v. Apple Eight Hosp. Mgmt., Inc.*, No. 16-1343, 2017 WL 1836974, at *3 (D. Kan. May 8, 2017) (same). However, the Court finds these cases unpersuasive. Rule 15 states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This implies that the Court must make an independent determination as to whether the amendment would be in the interests of justice (including whether it would be futile) regardless of what specific arguments the defendant makes. *See Adeleke v. Suffolk Cnty. Police Dep't*, No. 21-CV-03681 (GRB) (LGD), 2023 WL 11844273, at *7 (E.D.N.Y. Feb. 8, 2023) ("The Court may sua sponte decline to permit amendment as futile for reasons independent of those provided by Defendants." (citing *Shoemaker v. California*, 101 F.3d 108 (2d Cir. 1996))). Because the Court can consider the futility of a proposed amendment on its own initiative, it would be pointless and counterproductive to bar one defendant from arguing futility on behalf of others. *Cf. L.H. v. Red Roof Inn, Inc.*, No. 3:22-CV-625-CHB-RSE, 2025 WL 714385, at *19 (W.D. Ky. Mar. 5, 2025) (regardless of whether one defendant can argue on behalf of others against motion for leave to

7

amend, "the Court must evaluate the merits of Plaintiff's motion" to determine whether to grant leave).

In sum, the Court will deny Harris's motion to strike. In his response to the motion to strike, Borta also asks the Court to sanction Harris for filing a frivolous motion. However, the Court is not persuaded that sanctions are warranted. As noted above, there is some authority for the principle that one defendant cannot argue futility on behalf of another, so Harris's contention was not legally baseless. And while a motion to strike is not the proper way to respond to an opposing party's brief, Harris's motion was in essence a reply brief, which he likely would have been entitled to file had he used the proper procedural vehicle to do so. Thus, the unnecessary motion to strike did not cause any undue prejudice to Borta, and the Court declines to grant sanctions.

### B. Good Cause

Turning to the motion for leave to amend, Borta argues that Harris should be denied leave because he cannot establish good cause for filing his motion after the deadline set by the scheduling order. As detailed above, Harris's explanation for his delay is that he did not have access to the body camera footage until October 2, 2025, several weeks after the deadline to move for leave to amend had passed. Borta argues that Harris should have obtained the footage long ago by seeking a subpoena from the Court under Rule 45. *See* Fed. R. Civ. P. 45. Instead, Harris waited on the FOIA request and then eventually withdrew it, choosing to instead seek the footage via a request for production. Borta suggests that this request for production was misdirected, presumably because individual officers do not have access to or control over police body camera footage. Borta also points to various delays—such as the gap between Harris's receipt of Borta's interrogatory response on September 2 and renewal of the FOIA request on September 26, or between Harris's receipt of the video footage on October 2 and filing of the second motion for

leave to amend on October 30—as evidence that Harris did not act diligently in attempting to obtain the footage.

Although the Court acknowledges that subpoenaing the GRPD would likely have been a more prudent course of action, it ultimately finds that Harris and his counsel acted diligently in attempting to procure the footage.  Even if Borta was not the proper target of the request for production of the video, Harris's counsel's mistaken belief to the contrary was excusable given that the Grand Rapids City Attorney initially represented Borta in this lawsuit.  And it is hard to characterize Harris's belief that Borta could obtain the video as patently unreasonable given that Borta *did* ultimately provide the footage.  Moreover, Harris's filing of the FOIA request and follow-up inquiries indicate that he made a good-faith effort to obtain the footage before the amendment deadline.

The good cause inquiry also requires evaluating prejudice to the defendant.  Borta argues that the amendment would cause him significant prejudice because "[e]ach new iteration, additional party, and new allegation expands discovery obligations and extends litigation on claims that lack legal viability." (Def.'s Br. in Opp'n to 2d Mot. to Amend 9–10.)  But Harris's allegations against Borta are essentially the same in the operative complaint and the proposed amended complaint, so amending will not create additional litigation for Borta on those issues.  And it is not clear why adding additional defendants would increase *Borta's* discovery obligations.  Borta also argues that "[g]ranting leave would prejudice Defendant Borta by requiring defense of facially deficient claims against newly named officers who have never been served, identified, or implicated in any misconduct." (*Id.* at 10.)  Again, it is difficult to understand why adding claims against new defendants would require any additional defense on Borta's part.

9

Ultimately, the Court concludes that in these early stages of litigation, adding additional defendants will not significantly prejudice Borta, especially given that the allegations in the amended complaint remain restricted to a single event. It is also worth noting that if the Court denied the motion to amend based on Harris's delay, he could simply raise his claims against the proposed defendants in a separate action that would likely be eventually consolidated with this one. "Such a posture would result in effectively the same outcome as granting Plaintiff's motion in a manner requiring multiple procedural steps in the interim," so "the principle of judicial economy disfavors this course of action." *Red Roof Inn,* 2025 WL 714385, at *21 (cleaned up).

In short, the Court concludes that Harris has established good cause for the delay in filing his motion for leave to amend. Accordingly, it will evaluate the merits of the motion for leave.

**C. Futility**

Borta argues that Harris's motion should be denied because his proposed amendment would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Borta makes several arguments as to why Harris's amended complaint would not survive a 12(b)(6) motion to dismiss for failure to state a claim, but none are persuasive.

First, Borta argues that the proposed amended complaint does not sufficiently specify which officers committed which acts during the traffic stop. It is true that some of the allegations lack clarity in this regard. (*See, e.g.*, Proposed Am. Compl. ¶¶ 15 ("The defendant Eastman or another officer then exited Sergeant Johnson's vehicle . . . ."), 26 ("[T]he defendant officers Borta, Stewart, and others ordered Mr. Harris to walk to them slowly . . . ."), 30 ("The defendants Augustat, Eastman, and Siemersma, or others, with the acquiescence of other officers at the scene, also did a search.").) However, even in the summary judgment context—i.e., at a much later stage of litigation than this case has reached—a plaintiff who, "because of circumstances beyond his

control," cannot specify exactly which officer committed which specific acts can still maintain a claim "when he introduces sufficient evidence to place the officer at the scene." *Batson v. Hoover*, 788 F. App'x 1017, 1020 (6th Cir. 2019).  Here, Harris has alleged that each proposed defendant was at the scene, and many of his allegations specifically indicate the actions of each officer.  Moreover, any uncertainty as to which defendants committed which acts can be eliminated in discovery.  Thus, the proposed amendment would not be futile due to its lack of specificity.

Second, Borta contends that Harris's claims are barred by qualified immunity because the officers in question had a facially valid warrant for Martez's arrest.  As an initial matter, while the Court explained above that it *can* generally address Borta's futility arguments on behalf of other defendants, it arguably *cannot* address Borta's qualified immunity argument because that is an affirmative defense that those defendants could choose to waive.  *See Blue Chip 2000 Com. Cleaning, Inc. v. Wash. Prime Grp., Inc.*, No. 1:23-CV-718, 2025 WL 2061465, at *5 (S.D. Ohio Mar. 11, 2025) (a defense that is "waivable only by the affected parties . . . cannot be raised on another's behalf by anyone else").  Regardless, Borta's qualified immunity argument fails anyway because Harris's claims are not based on the (un)lawfulness of Martez's arrest.  Rather, Harris alleges that it was unlawful for the officers to point weapons at him, search him, handcuff him, place him in a police car, and search his car.  None of these actions would necessarily be excused by a facially valid warrant for *Martez's* arrest.

Third, Borta asserts that Harris has not stated a plausible excessive force claim because officers are justified in pointing firearms at people "during a high-risk stop." (Def.'s Br. in Opp'n to 2d Mot. to Amend 7.)  But even assuming that this was a "high-risk stop," the risk would have come from Martez, who was suspected of violating parole, not from Harris.  Thus, it is unclear what the officers' justification was for pointing weapons at Harris.  And the Sixth Circuit has

11

"recognized that pointing a gun at an individual can constitute excessive force under the Fourth Amendment." *Wright v. City of Euclid*, 962 F.3d 852, 870 (6th Cir. 2020).  Thus, the Court cannot conclude that Harris's amended complaint will fail to state an excessive force claim.

Fourth, Borta argues that Harris cannot state a claim for unlawful search of his car.  Borta contends that the search was constitutional because the officers found open alcohol containers in the car, which violates Michigan law.  But Harris alleges that the containers were empty, and carrying empty containers does not appear to be prohibited by the statute Borta cites.  *See* Mich. Comp. Laws § 257.624a(1) (outlawing the "transport[ation] or possess[ion of] alcoholic liquor in a container that is open or uncapped or upon which the seal is broken").  Moreover, these containers could not provide the basis for a search if the officers only discovered them *after* conducting the search.  Borta also argues that the search of Harris's car was incident to an arrest, but such a search is justified "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," *Arizona v. Gant*, 556 U.S. 332, 343 (2009), which does not appear to be the case based on Harris's allegations.  Police are also permitted to search a car without a warrant when they have probable cause to believe it contains contraband, *see Maryland v. Dyson*, 527 U.S. 465, 467 (1999), but there is no indication that such probable cause existed here.

Fifth, Borta argues that Harris cannot bring a claim against the City of Grand Rapids because he does not allege that the officers acted pursuant to City policy during the traffic stop. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (cities are only liable under 42 U.S.C. § 1983 for actions of employees taken pursuant to governmental "policy or custom").  Harris's claims against the City are based on the allegation that Johnson told Harris that the officers' conduct during the traffic stop "was the policy of the Grand Rapids Police Department . . . with

12

respect to all parole violation warrant arrests." (Proposed Am. Compl. ¶ 36.) Borta asserts that "[a] single comment from a non-policymaking sergeant does not establish a municipal policy or custom." (Def.'s Br. in Opp'n to 2d Mot. to Amend 8.) But Harris is not arguing that the single comment *establishes* a policy; he is suggesting that it is *evidence* that a policy exists. And while there is some ambiguity in Johnson's statement as to which aspects of the traffic stop were pursuant to City policy, the allegation is sufficient at this stage to make the proposed amendment not futile.

Sixth, Borta argues that Harris cannot bring state law claims for false arrest, false imprisonment, assault and battery, and conversion because he has not sufficiently alleged the elements of these claims. Borta does not elaborate on what elements Harris fails to allege, and the Court is satisfied that Harris's proposed amended complaint contains sufficient allegations going to the elements of each of these claims.

Finally, Borta contends that Harris cannot bring state law tort claims against the proposed defendant officers or the City of Grand Rapids because they are entitled to governmental immunity. As an initial matter, Harris's state law claims are only against the "individual defendants" (Proposed Am. Compl. ¶ 75), not Grand Rapids. As to the officers, since individual governmental immunity is a waivable affirmative defense, *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 227–28 (Mich. 2008), it is not clear that Borta can raise it on behalf of other defendants, for the reasons discussed above. More importantly, "[t]o be entitled to governmental immunity, [a] defendant must establish that she was acting in the course of her employment and at least reasonably believed that she was acting within the scope of her authority, that her actions were discretionary in nature, and that she acted in good faith." *Id.* at 228–29. Given that the only facts before the Court are those alleged by Harris, it cannot be said that any defendants have established

13

their good faith or reasonable belief that they acted within the scope of their authority. Therefore, it would be inappropriate to deny the motion to amend on that basis.

In sum, the Court finds that Harris's proposed amendment would not be futile. Moreover, none of the other potential reasons for denying a motion to amend—undue delay, bad faith, failure to cure prior pleading deficiencies, or undue prejudice—are present here. *See Morse*, 290 F.3d at 800.

### IV. CONCLUSION

The Court will grant Harris's motion for leave to amend his complaint, deny his motion to strike Borta's response, and direct the Clerk of Court to enter Harris's proposed amended complaint on the docket as the operative complaint. An order will enter in accordance with this Opinion.

Dated: January 12, 2026         /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE